IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LISA BARNEY,<br><br>       Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART Commissioner of the Social Security Administration,<br><br>       Defendant. | **MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL**<br><br>Case No. 2:05cv00791<br><br>Judge Dale A. Kimball |

      Plaintiff, Ms. Lisa Barney, appeals the denial of her claims for Disability Insurance Benefits and Supplemental Security Income benftis by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  For the reasons outlined below, the Commissioner's decision is REVERSED and REMANDED.

## I. STANDARD OF REVIEW

      The Commissioner's decision is reviewed to determine whether the factual findings are supported by substantial evidence and whether the relevant legal standards were correctly applied. <u>Daniels v. Apfel</u>, 154 F.3d 1129 (10th Cir. 1998), <u>citing</u> <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1028 (10th Cir. 1994).  Substantial evidence is more than a mere scintilla but less than a preponderance.  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389 (1971).

## **II. DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining disability. The five steps are: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or equals the criteria for an impairment listed in Appendix 1 of 20 C.F.R. Subpt. P; (4) whether the impairment prevents the claimant from performing her past relevant work; and (5) whether the impairment prevents the claimant from performing other work. The burden is on the Plaintiff to meet the first four steps. However, if Plaintiff does meet all four, the burden shifts to the Commissioner to establish that there are other jobs existing in a significant number in the national economy which Plaintiff is capable of performing.

In the present case, the Commissioner, through the written decision of the ALJ, held at step one that Ms. Barney had not engaged in SGA since her alleged onset date. At step two, he found that she had severe impairments of Depression and Borderline IQ. (Tr. 21). At step three, the ALJ found that none of Ms. Barney's impairments met or equaled a Listing. (Tr. 22). At step four, he found that Ms. Barney was unable to return to any past relevant work. At step five, he found that she could make a vocational adjustment to other work. (Tr. 22).

Ms. Barney dispute's the ALJ's conclusions at steps two through five and raises the following issues: (1) that the ALJ failed to properly consider the opinions of Ms. Barney's treating physician, Kevin Lambert, MD, and (2) that the ALJ unjustifiably relied on the testimony of the vocational expert at the hearing by not asking if the vocational expert's testimony was consistent with the Dictionary of Occupational Titles, and therefore failed to

2

prove that there were jobs Ms. Barney could do that existed in significant numbers in the national economy.

First, as just noted, Ms. Barney argues that the ALJ did not properly consider the opinions of her treating physician, Dr. Lambert.  I agree.

The opinion of a treating physician is entitled to great weight and the Commissioner must provide "specific, legitimate reasons" for rejecting a physician's opinion.  See Miler v. Chater, 99 F.3d 972 (10th Cir. 1996); Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987).  Those reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Social Security Ruling 96-2p "Giving Controlling Weight to Treating Source Medical Opinions" (on the web at www.ssa.gov/OP_Home/rulings).  Bare conclusions are "beyond meaningful judicial review."  Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996).  Furthermore, "[t]here are several specific factors the ALJ must consider, including:

(1) the length of the treatment relationship and the frequency of the examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion."

Drapeau v. Massanari, 10 Fed. Appx. 657, 661 (10th Cir. 2001) quoting Goatcher v. U.S. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th cir. 1995) (emphasis added).

A treating physicians' opinion is given additional weight because they have had the opportunity to know their patient for an extended period of time and are experts in the field of medicine and in evaluating such things as test results and clinical findings and presentations. See 20 CFR §§ 404.1527(d). In addition, during this extended time, the treating doctor assesses such issues as credibility and symptom magnification. Medical doctors are trained to do such. A treating physician's opinion "reflects expert judgment based on continuing observation of patient's condition over a prolonged period of time." Williams v. Chater, 923 F.Supp. 1373, 1379 (D. Kan. 1996). The Commissioner's own regulations provide that "we will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d).

In Ms. Barney's case, the ALJ failed to properly consider the opinions of Dr. Lambert. On July 5, 2004, Dr. Lambert completed a Medical Report, assessing Ms. Barney's mental health status. Dr. Lambert diagnosed major depression, moderate to severe, very treatment resistant, and attention deficit disorder. He also noted that she had been on multiple medications and that none were very effective. Her prognosis is "poor." (Tr. 382). In a Work Capacity Evaluation (Mental) completed the same day, Dr. Lambert noted that Ms. Barney has *marked* limitations in the following areas: the ability to understand and remember detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to respond appropriately to change in the work setting; and the ability to set realistic goals or make plans independently of others.

In addition to these marked limitations, Dr. Lambert noted moderate limitations in eleven

other areas of functioning. Namely, he found moderate limitations in her ability to: remember locations and work-like procedures; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation. (Tr. 383-85).

Dr. Lambert also added handwritten notations, explaining that Ms. Barney has low normal to borderline intelligence; is very depressed; is very impaired in capacity to reason; is very immature; has poor concentration; can't see others' needs or points of view; has attention deficit disorder; is very defensive; is easily overwhelmed; is very passive aggressive with her mother and unable to separate. Id.

After the ALJ presented his own findings regarding Ms. Barney's residual functional capacity (RFC), the ALJ asserted that this RFC finding was consistent with Dr. Lambert's opinion "except that Dr. Lambert assessed claimant's limitations in maintaining attention and concentration as 'marked.'" (Tr. 20). He then proceeded to explain that because Dr. Lambert is a long-term treating physician, he "mostly accepts" his opinion – except for the "marked" limitation in maintaining attention and concentration. Id. Despite the ALJ's claim to have

accepted the rest of Dr. Lambert's opinion, a number of Dr. Lambert's assessed limitations are not found in the ALJ's RFC finding.

Dr. Lambert assessed a number of other significant limitations which were not included in the ALJ's RFC finding.  Because the ALJ accepted the rest of Dr. Lambert's opinion (excluding only the "marked" limitation in attention and concentration), the ALJ erred in failing to include the rest of Dr. Lambert's assessed limitations in his RFC finding and in failing to explain why he did not include those limitations.  Absent from the ALJ's RFC finding are two other "marked" limitations identified by Dr. Lambert.  In addition to "marked" deficiencies in attention and concentration, Dr. Lambert also found "marked" limitations in the following areas: the ability to understand and remember detailed instructions; the ability to respond appropriately to change in the work setting; and the ability to set realistic goals or make plans independently of others.  (Tr. 383-85).  While the latter was included in the ALJ's RFC finding (Tr. 19), these other two "marked" limitations are not – and the ALJ gave no reason for rejecting them.  Indeed, he explicitly accepted all of Dr. Lambert's findings except for the "marked" limitation in sustained attention and concentration.  (Tr. 20).

The ALJ also failed to include in his RFC finding several "moderate" limitations identified by Dr. Lambert, which findings were inconsistent with the ALJ's RFC, despite the assertion of the ALJ that his RFC finding was consistent with Dr. Lambert's except for limitations in attention and concentration.  The moderate limitations identified by Dr. Lambert, which were not included in the ALJ's RFC finding, are as follows: moderately limited ability (1) to sustain an ordinary routine without special supervision; (2) to interact appropriately with the

general public; (3) to be aware of normal hazards and take appropriate precautions; and (4) to travel in unfamiliar places or use public transportation.  Thus, the ALJ's failure to include these other "marked" and "moderate" limitations in his RFC assessment without explanation is error.

Therefore, the Court REMANDS the case on this issue for a proper consideration of the limitations discussed above indicated by Dr. Lambert.

### III. CONCLUSION

Based upon the above analysis, IT IS HEREBY ORDERED that pursuant to sentence four of 42 USC § 405(g) the Commissioner's decision denying Ms. Barney's applications for Disability Insurance Benefits and Supplemental Security Income is REVERSED and REMANDED for further administrative proceedings.  IT IS FURTHER ORDERED that judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the United States Supreme Court's decision in Shalala v. Schaefer, 509 US 292, 296-302 (1993).

DATED this 26th day of October, 2006.

_____
Honorable Dale A. Kimball
United States District Court